**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1) Great Lakes Insurance, SE | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 26-CV-00208-MTS |
| (1) Doerner, Saunders, Daniel & Anderson, LLP, | ) ) ) | |
| and | ) ) | |
| (2) Michael S. Linscott, | ) ) | *Jury Trial Demanded* |
| Defendants. | ) ) | |

**COMPLAINT**

Plaintiff, Great Lakes Insurance SE, states as follows for its cause of action against Defendants Doerner, Saunders, Daniel & Anderson, LLP and Michael S. Linscott.

**PARTIES, JURISDICTION, VENUE**

1. Plaintiff Great Lakes Insurance SE is a foreign corporation organized under the laws of Germany. Its principal place of business is in Munich, Germany.

2. Great Lakes is an insurance company licensed to issue insurance policies in the State of Oklahoma.

3. Defendant Doerner, Saunders, Daniel, & Anderson, LLP ("Doerner") is a law firm and domestic limited liability partnership organized under the laws of the State of Oklahoma. Upon information and belief, Doerner's principal place of business is in Tulsa, Oklahoma. Therefore, it is a citizen of the State of Oklahoma.

1

4.      Doerner is subject to general personal jurisdiction in Oklahoma because it is a domestic company and an Oklahoma citizen; it is domiciled in Oklahoma.

5.      Mr. Michael S. Linscott is a natural person and attorney licensed to practice law in the State of Oklahoma. He is a managing partner of Doerner.

6.      Attorney Linscott's law office is in Tulsa County, Oklahoma.

7.      Upon information and belief, Attorney Linscott resides in Tulsa County, Oklahoma.

8.      Upon information and belief, Attorney Linscott is a citizen of the State of Oklahoma.

9.      Attorney Linscott is subject to general personal jurisdiction in Oklahoma because, upon information and belief, he is an Oklahoma citizen; he is domiciled in Oklahoma.

10.     Great Lakes Insurance Company's damages exceed $75,000.00.

11.     This Court has original jurisdiction over the action pursuant to 28 U.S.C. § 1332(a)(2) because Plaintiff Great Lakes Insurance Company is a citizen of a foreign state and the Defendants are citizens of the State of Oklahoma.

12.     Venue is appropriate in the Northern District of Oklahoma pursuant to 28 U.S.C. § 1391(b)(1) because, upon information and belief, Attorney Linscott resides in this district.

### BACKGROUND FACTS

**A.      The underlying litigation.**

13.     Doerner and Attorney Linscott represented Great Lakes in Cherokee County Case No. CJ-2021-58, *Estate of Harold Dean Gage, et al v. Great Lakes Insurance, SE et al* (the "Underlying Litigation").

14.     In the Underlying Litigation, Great Lakes issued a commercial insurance policy to Mr. Harold Dean Gage in Mr. Gage's capacity as an owner/investor of an apartment complex.

15.     On July 22, 2019, there was a fire at the apartment complex. Mr. Gage allegedly incurred a loss of approximately $27,000 from the fire. Mr. Gage filed an insurance claim with Great

Lakes to cover the alleged loss. Great Lakes denied the claim.

16.     On May 24, 2021, Mr. Gage sued Great Lakes. The underlying plaintiff —Mr. Gage and, later, his Estate—alleged that Great Lakes unreasonably denied the insurance claim in bad faith. The underlying plaintiff sought approximately $27,000.00 in direct damages from Great Lakes (representing the value of the denied insurance claim). The underlying plaintiff requested punitive damages from Great Lakes in the Underlying Litigation as well.

17.     In June of 2021, Great Lakes retained Attorney Linscott and his law firm, Doerner, to defend Great Lakes in the Underlying Litigation.

18.     Attorney Linscott was Great Lakes' lead trial counsel for the Underlying Litigation.

19.     Upon information and belief, Attorney Linscott was the managing partner of Doerner throughout the entire course of the Underlying Litigation.

20.     Attorney Linscott and a Doerner associate were Great Lakes' attorneys throughout the entire course of the Underlying Litigation.

21.     Great Lakes was found liable for $92 million in the Underlying Litigation due to Attorney Linscott's and Doerner's professional negligence during the Underlying Litigation.

22.     Alternatively, the damages awarded against Great Lakes were exponentially exacerbated due to Attorney Linscott's and Doerner's professional negligence during the Underlying Litigation.

> **B.     Attorney Linscott materially and prejudicially failed to object to the underlying plaintiff's improper voir dire.**
>
> *i.   Oklahoma law on voir dire is well-established.*

23.     Great Lakes was severely prejudiced during voir dire. Although the trial was only a couple days long, the underlying plaintiff's voir dire took up the better part of a day.

24.     Oklahoma law governing the appropriate scope and purpose of voir dire is clear,

unambiguous and well-settled by Oklahoma courts.

25.    "The purpose of voir dire is to ascertain whether there are any grounds to challenge prospective jurors for cause and to permit the intelligent use of peremptory challenges." *Phillips v. State*, 650 P.2d 910, 914 (Okla. Cr. 1982).

26.    Voir dire which falls outside of that well-established scope is improper. For example, lawyers must "refrain from such intimacy with the jury as might tend to breed familiarity to the detriment of the defendant." *McMahan v. State*, 354 P.2d 476, 484 (Okla. Cr. 1960).

27.    Voir dire is also unambiguously governed by Oklahoma State District Court Rule 6. "Counsel shall scrupulously guard against injecting any argument in their voir dire examination and shall refrain from asking a juror how he would decide hypothetical questions involving law or facts." *Id.*

28.    Rule 6 continues: "Counsel . . . **shall not call jurors by their first names or indulge in other familiarities with individual jurors**, and shall be fair to the court and opposing counsel." *Id.* (emphasis added).

29.    These boundaries have applied to both civil and criminal proceedings for nearly 40 years. *Strube v. State*, 739 P.2d 1013, 1015 (Okla. Cr. 1987).

30.    Because Oklahoma law clearly and unambiguously defines the appropriate scope, purpose, and extent of permissible voir dire (as well as voir dire that is prohibited), a well-informed lawyer could not entertain reasonable doubt regarding when voir dire becomes objectionable under binding Oklahoma precedent.

*ii. Counsel for the underlying plaintiff conducted an objectively inappropriate voir dire in violation of Oklahoma law.*

31.    The underlying plaintiff's voir dire violated well-established Oklahoma precedent.

32.    Counsel for the underlying plaintiff, Attorney Richard Toon, routinely referred to

QB\100803170.2

prospective jurors by their first names in violation of Oklahoma State District Court Rule 6.

33.     Attorney Toon referred to prospective jurors by their first names more than 200 times during voir dire.

34.     For example, Attorney Toon engaged prospective jurors in the following exchange:

> MR. TOON: Geraldine, you have my tip yet or are you waiting?
>
> PROSPECTIVE JUROR MOORE-BERES: Not yet.
>
> MR. TOON: Okay. Maybe others will have tips for me and I'm all ears y'all. Okay. This is going to seem like a weird thing and, so, you know, in sporting events the way that you start on the wave.
>
> I'm not asking you all to stand up, but starting here can you all just go like this and go down the row? Go ahead, please. Michael, did I miss you? Okay. All the way to Jennifer. Okay. Y'all did that as one.
>
> Are you all feeling pretty good about what you're hearing in here from the other jurors that -- from what you're hearing. Are you all feeling good about that, Deneace?
>
> PROSPECTIVE JUROR WHITE: Yes.
>
> MR. TOON: Anyone not feeling good about it or like I can't believe what these people are saying? Jared? No? Okay. But just like that with the wave of doing it together is what you're going to do in the other room. So at some point during this if you're like, okay, we've gotten this far into it I think I need to be excused let me know. Okay. All right.

35.     Attorney Toon also impermissibly "indulge[d] in other familiarities with individual jurors" by promoting their local businesses, chatting about fishing, and complimenting prospective jurors' character, contrary to Oklahoma law:

> MR. TOON: Okay, thank you for that. Debra, hi.
>
> PROSPECTIVE JUROR JOHNSON: Hello. I like to sew. I make native regalia and I do beadwork.
>
> MR. TOON: You sell some of that stuff?
>
> PROSPECTIVE JUROR JOHNSON: Yes, my husband and I own a store.
>
> MR. TOON: You want to tell us what it is in case anyone wants to stop by?
>
>            *          *          *
>
> MR. TOON: Robert?

QB\100803170.2

PROSPECTIVE JUROR FRAZIER: I like to fish, yard work.

MR. TOON: Okay.

PROSPECTIVE JUROR FRAZIER: Fish and yard work.

MR. TOON: You hit the spawn yet?

PROSPECTIVE JUROR FRAZIER: No, I ain't been this year.

\*               \*               \*

MR. TOON: Well, you smile a lot which probably makes you an optimist, I would think.

PROSPECTIVE JUROR ESTEP: I'm pretty sure.

MR. TOON: Are you a pretty happy person?

PROSPECTIVE JUROR ESTEP: Sometimes.

MR. TOON: Okay. Well, you're happy right now.

\*               \*               \*

MR. TOON: Okay. Robert, of all the jurors you're the toughest. You should play poker for a living. I really can't -- what I mean, what do you think? Help me out here. Be brutally honest with me. Do you think it's based on the length of the trial and how big the verdict is or who wins or....

\* \* \*

MR. TOON: The one thing I have to disagree with you when you say you're not smart; you are. That's what a jury is about, is all of you coming together as one and to speak for the community. You all decide. We don't.

PROSPECTIVE JUROR ESTEP: True.

MR. TOON: Isn't that incredible?

PROSPECTIVE JUROR ESTEP: Thank you. Did you just call me smart? All right.

MR. TOON: I also asked if you were fired up? Thank you. Thank you.

36.    Moreover, Attorney Toon argued facts of the case during voir dire:

MR. TOON: Michael, what's your thought on it? On lawyers, on this is what I do, this is what we do and Jenny [the underlying plaintiff's widow and personal representative], her husband [the underlying plaintiff], can't be here because he's gone. And so after Hal passed she asked me to help and I said, okay, let's go. Okay. I can't get into the facts right now. I want to tell you so badly I can't wait until you see them. Who here has a problem with that that I'm a plaintiff's lawyer and Jenny gets in touch

QB\100803170.2

with me and says will you continue the case even though Hal passed and I said yes? And I said, Jenny, I'll do the same agreement that I had with Hal; is that okay? Yes. Are you going to hold that against -- really, more importantly on whether you would hold it against me I'm wondering if you would hold it against Jenny, my friend now? Okay.  Hopefully by the end of my questions the rest of you will not decide that you dislike lawyers, but if you do, tell me. I always want to be better. Every time I have a case its like, yes, I want to keep getting better. There's something better I can do; talk less, get to the point. Whatever it is, I just want to know. Will you all do that for me, please?  Geraldine, I want you, before I'm done, to give me a tip on how to do this better, please. Okay.

Have y'all ever heard the phrase trust me? Trust me. Lawyers all the time tell juries you can trust me. Amy, you can trust me. Do it all the time. I'm not going to. I'm not going to ask you to trust me. You don't know me. You don't know me. You don't know the other lawyers here. You don't know my assistant. You don't know Jenny. I'm not going to ask you to trust anyone. The only thing I want to know is will you give me the opportunity to earn your trust? That's all I'm asking. Will you give me the opportunity to earn your trust?

Archie, you give some pretty tough looks from time to time. Will you give me that opportunity if you're chosen?

PROSPECTIVE JUROR NICHOLS: You can have the opportunity, yeah.

MR. TOON: Thank you. Thank you. Deborah, will you give me the opportunity?

PROSPECTIVE JUROR ESTEP:  Absolutely.

37.     Finally, Attorney Toon asked each juror how they would respond to hypothetical questions by asking jurors about *issues that arose in the case*, such as how jurors would assess punitive damages, how jurors evaluated plaintiffs' lawyers' credibility, how jurors would improve insurance companies, and inappropriately encouraged the jury to reach a "sky's the limit" verdict in the Underlying Litigation:

> MR. TOON:  Okay.  Thank you for that. Jennifer, where are you on that with what Debra was talking with us about?
>
> PROSPECTIVE JUROR ESCHBERGER: Pretty much same. You need to look at everything. I don't think it's an impossibility to have mental anguish and pain and suffering and stuff on cases.
>
> *            *            *

QB\100803170.2

MR. TOON: I'm glad that you brought that up, too, on the money part. I'm not going to shy away from this at all. I mean, I'm a plaintiff's lawyer, y'all. This is what I do for a living. I don't do criminal defense. I'm a plaintiff's lawyer. Okay. I represent people. Probably almost -- really everyone knows that, generally, I don't get paid unless we win and some folks will say, well, that's incentive to lie. That's incentive to lie. You ain't going to get paid unless you win. You're on a contingency fee and you get a percent. What do you all think about that?  I mean, I'm a plaintiff's lawyer standing in front of you brutally honest. Talk to me, please. Tell me what you think about it, please, Michael.

*          *          *

PROSPECTIVE JUROR ESCHBERGER: My other passion would be Type 1 diabetes advocacy. We have so many people with Type 1 don't know how they stand up for themselves with regards to getting assistance with it dealing with insurance and doctors and that good stuff.

MR. TOON:  Okay.

PROSPECTIVE JUROR ESCHBERGER: I've been dealing with that for almost 30 years, so I figure they can learn from my mistakes and I can help somebody learn how to deal with it.

MR. TOON: What's the one thing you've learned on how to deal with insurance companies and how to make that better?

PROSPECTIVE JUROR ESCHBERGER: You have to -- if it's denied go for a -- the word just left my mind -- appeal. Thank you. Go for an appeal over and over. They wouldn't be able to tell me that I can't have the insulin pump or the insulin that I need to live.

MR. TOON: Okay. Thank you very much for sharing that with us.

*          *          *

MR. TOON: So I have a friend that it doesn't matter what the evidence shows, it could be the worst company you have ever heard of that took advantage of somebody that didn't care, just ran over them, and no matter what he has a cap on it without hearing the evidence. He's like I just don't care. His number is 10 million. He says I cannot think of any circumstance at 10 million that it would be worth more than 10 million dollars. Then I've got another friend that says that's crazy. I don't care if it's a number million 50, 20, 200 million, billion, whatever, you've got to listen to the evidence. You've got to listen to the evidence and see what happened.

Amy, which one are you closer to on that? Are you closer to the 10 million or are you close to the sky's the limit based on the evidence?

8

38. A well-informed lawyer could not entertain reasonable doubt that the underlying plaintiff's voir dire was improper under established Oklahoma law, such as *Phillips*, *McMahan*, and Oklahoma State District Court Rule 6.

> *iii. Attorney Linscott did not object to the underlying plaintiff's illegal voir dire.*

39. Throughout each of the exchanges identified above—and others like them—Attorney Linscott sat silently by without making a single objection.

40. In fact, during the entirety of voir dire, Attorney Linscott's sole objection did not arrive until well into the underlying plaintiff's inappropriate voir dire: far too late to cure the jury pool of its unshakeable prejudice for the plaintiff absent any other objection from the defense.

**C.    Linscott erred by agreeing to, or failing to object to, the prejudicial statement of the case.**

41. Jury Instruction 4 entitled "THE ISSUES IN THIS CASE' was read to the jury by the judge at the start of voir dire.  The very first sentence instructed the jury, without qualification, that "[t]his case today i[s] an insurance company bad faith case."

42. Linscott either agreed to the statement of the case or failed to object to the statement which was tantamount to a determination by the judge the insurance company, Great Lakes, had committed bad faith.

43. In voir dire, underlying plaintiff's counsel attributed the statement to the Judge:  "I kind of heard what the Judge said, this is an insurance company bad faith case."

44. Linscott failed to object to counsel's attribution of the statement to the Judge.

45. In opening statement, underlying plaintiff's counsel again attributed the statement to the Judge: "So this is a – as the Judge said yesterday when he read what this case is about, he said this is an insurance company bad faith case.  This is a bad faith case.  It is.  It's exactly what it is."

46. Linscott failed to object to counsel's attribution of the statement to the Judge.

QB\100803170.2

47. In summation, plaintiff's counsel asked the Judge for the Judge's copy of the case instruction, read it to the jury, and again attributed the statement to the Judge: "This is the Instruction Number 4 and I brought this up even during my opening statement and the Judge read it to you. This is an insurance company bad faith case; *exact quote from the Judge*. I agree. I agree. You're darn right it is. Thank you. Your Honor." (Emphasis added).

48. Linscott failed to object to underlying plaintiff's counsel's attribution of the statement to the Judge.

49. In briefing on post-trial motions, underlying plaintiff's counsel noted that Great Lakes had waived the issues with the statement based on counsel's failure to object.

### D. Linscott failed to object to Plaintiff's counsel improperly inflaming the jury.

50. Underlying plaintiff's overriding narrative was that this case was "us" versus "them" – an opportunity for the "salt of the earth" people of Cherokee County to demonstrate their "power" over the "big," "soul"-less, foreign insurance company.

51. Underlying plaintiff's counsel in voir dire repeatedly emphasized the "power" the jury had to "speak for the community."

52. Throughout the trial, underlying plaintiff's counsel repeatedly referred to Great Lakes being a foreign insurance company, without ties to Oklahoma.

53. In summation, underlying plaintiff's counsel made even more explicit the us versus them narrative. Underlying plaintiff's counsel emphasized to the jury "the power that you all have" to "[d]ecide is it okay in this community to treat people the way the insurance company treated Hal Gage." Underlying plaintiff's counsel contrasted the foreign insurer ("I don't know what time it is in Germany right now, but I sure hope someone's letting them know…" and "they're a non-admitted insurer in the State of Oklahoma, but they sure want to take people's money.") against Oklahoma

QB\100803170.2

neighbors ("we are proud to be Oklahomans … when something really bad happens like the tornado that went through Moore . . . . we got our neighbors. That's the way Oklahomans are. That's the way people in this community are. That's the way I felt about you on Monday and I feel even stronger now.")

54. Linscott failed to object to any of the improper, inflammatory comments to attempt to keep the evidence out or at least preserve it on appeal.

**E.** **Despite a Motion in Limine prohibiting underlying plaintiff's counsel from any mention of punitive damages or punishments during the first phase of trial, Linscott failed to object when underlying plaintiff's counsel implored the jury to punish Great Lakes.**

55. The Court granted Great Lakes' motion in limine in which it argued that "due to the prejudicial nature of any mention of punitive damages or punishments during the first phase of the trial, plaintiff should be prohibited from discussing, mentioning, alluding to, or making arguments relative to punitive damages or punishments against Great Lakes under 12 O.S. §2043."

56. Given the Court's ruling in Great Lakes' favor, Linscott inexplicably failed to object when underlying plaintiff's counsel in his summation of the first phase of trial argued for and alluded to punishing Great Lakes.

57. In summation of the first phase of trial, underlying plaintiffs' counsel argued:

- "What does the insurance company stand for, destruction of lives? Destruction"

- "I want you to hit them where it hurts, please" and "please hit them where it hurts."

- "They don't care. They ain't ever going to change unless you use the power that's been bestowed upon you by being chosen in this jury."

- "This community will remember you. I will remember you. You should be proud for what you're about to do. You should be very proud."

11

58. Linscott failed to object to any of those arguments in violation of the Court's ruling in limine.

**F.    Attorney Linscott's professional negligence caused Great Lakes millions of dollars in damages.**

59. After a three-day trial, the jury retired to deliberate what had started out as a denied insurance claim for about $27,000.00 and alleged bad faith.

60. The jury returned with a verdict in excess of $92 *million* against Great Lakes and for the underlying plaintiff: $65,000,000.00 in actual damages and $27,426,640.00 in punitive damages.

61. The jury delivered this verdict because they were irreparably swayed by the underlying plaintiff's inappropriate familiarity and because they were inappropriately primed by the underlying plaintiff's improper arguments during voir dire and throughout the trial, and because of the negligence of Linscott.

62. Great Lakes filed post-trial motions.

63. Underlying plaintiff's primary response to the post-trial motions was that Linscott had failed to preserve, and had waived, the errors alleged in Great Lakes' post-trial motions.

64. Before judgment was entered in the underlying litigation and in order to mitigate the damage to Great Lakes, Great Lakes settled the Underlying Litigation with the underlying plaintiff.

**Count I**
**Negligence**

65. Plaintiff Great Lakes hereby incorporates by reference the allegations in all prior paragraphs as if fully restated herein.

66. Defendants had an attorney-client relationship with the Plaintiff, Great Lakes.

67. Defendants owed Great Lakes a duty to defend the Underlying Litigation in accordance with the acceptable professional standards which bind all attorneys.

QB\100803170.2

68.     The defendants breached that duty because their defense in the Underlying Litigation fell below the acceptable professional standard for trial lawyers.

69.     Attorney Linscott's material and prejudicial failure to object, and preserve for appellate review, the multitude of improper evidence, including but not limited to those instances listed above, in the Underlying Litigation constitute legal malpractice.

70.     This negligence caused the jury to return a verdict of $65,000,000.00 in actual damages, an amount almost 2,500 times greater than what the underlying plaintiff sought for actual damages. This negligence also caused the jury to return a verdict of $27,426,640.00 in punitive damages, approximately 1,000 times greater than the amount of actual damages at issue.

71.     But for the defendants' negligence, Great Lakes would have been granted a defense verdict in the underlying litigation.

72.     In the alternative, but for the defendants' negligence, the jury would have returned a verdict for the underlying plaintiff and against Great Lakes only for actual damages, but would not have awarded punitive damages.

73.     In the alternative, but for the defendants' negligence, the jury would have returned a verdict for the underlying plaintiff and against Great Lakes, but in an amount no greater than the actual damages sought by the underlying plaintiff: $27,000.00.

74.     As a result of the Defendants' negligence, Great Lakes has suffered damages in excess of $75,000.00.

**WHEREFORE**,  Plaintiff Great Lakes Insurance SE hereby requests judgment in its favor and against the defendants, for actual damages, costs, fees, and interest as allowed by law, and all other further relief that the Court deems just and equitable.

QB\100803170.2

Respectfully submitted,

/s/Laura L. Hamilton
Laura L. Hamilton, OBA #22619
Lawrence R. Murphy, Jr., OBA #17681
HAMILTON MURPHY LAW, PLLC
1800 S. Baltimore Ave., Suite 420
Tulsa, OK 74119
P: (918) 973-5373
F: (918) 771-2863
laura@hamiltonmurphylaw.com
larry@hamiltonmurphylaw.com


/s/Keith A. Bruett
Keith A. Bruett, *to be admitted pro hac vice*
Ellen E. Anderson, *to be admitted pro hac vice*
**QUARLES & BRADY, LLP**
411 East Wisconsin Avenue, Suite 2400
Milwaukee, WI 53202
(414) 277-5000
keith.bruett@quarles.com
ellen.anderson@quarles.com

*Attorneys for Plaintiff Great Lakes Insurance, SE*

14

QB\100803170.2