**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1) Great Lakes Insurance, SE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) Case No. 26-CV-00208-MTS | |
| | ) | |
| (1) Doerner, Saunders, Daniel & Anderson, | ) | |
| LLP, and | ) | |
| (2) Michael S. Linscott, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION TO DISMISS & BRIEF IN SUPPORT

Respectfully submitted,

**FRANDEN | FARRIS | QUILLIN**
**GOODNIGHT | ROBERTS + WARD**

Joseph R. Farris, OBA #2835
Two West 2nd Street, Suite 900
Tulsa, Oklahoma 74103
Tel:    918/583-7129
Fax:    918/584-3814
jfarris@tulsalawyer.com
***Attorney for Defendants***

Defendants **DOERNER, SAUNDERS, DANIEL, & ANDERSON, LLP** ("DSDA") and **MICHAEL S. LINSCOTT** move the Court to dismiss Plaintiff's Complaint (Dkt. No.1) for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).  In support of their Motion, Defendants submit the following Brief in Support.

## BRIEF IN SUPPORT

### I. Statement of Relevant Facts

1.      DSDA and Linscott represented Plaintiff in Cherokee County Case No. CJ-2021-58, styled *Estate of Harold Dean Gage, et al. v. Great Lakes Insurance, SE et al.* (the "Underlying Litigation").  (Complaint, Dkt. No 1, ¶ 13).

2.      The facts giving rising to the Underlying Litigation were as follows:  Plaintiff issued a commercial insurance policy to Harold Gage on an apartment complex. On July 22, 2019, a fire occurred at the apartment complex.  Gage allegedly incurred a loss of around $27,000 from the fire and filed a claim under Plaintiff's policy to cover the alleged loss. Plaintiff denied the claim.  (*Id.* ¶¶ 14-15).

3.      On May 24, 2021, Gage sued Plaintiff in the Underlying Litigation, claiming Plaintiff unreasonably denied the insurance claim in bad faith. Gage sought actual and punitive damages.  Gage passed away during the course of the litigation, and his estate was substituted in his place.  (*Id.* ¶ 16).

4.      The Underlying Litigation was tried to a jury from April 15 through April 18, 2024. The jury entered a verdict against Plaintiff for approximately $92.5 million, which represented $65 million in actual damages and $27,426,640.00 in punitive damages. (*Id.* ¶¶ 21, 60).

5.      Plaintiff alleges Defendants engaged in malpractice primarily by failing to object to certain portions of Gage's counsel's *voir dire* examination of prospective jurors during trial in the Underlying Litigation. (*Id.* ¶¶ 23-40).

1

6.      Particularly, Plaintiff alleges it was severely prejudiced by Defendants' representation during *voir dire* because Linscott did not object to Gage's counsel calling prospective jurors by their first names, *id.* ¶¶ 32-33, engaging in pleasantries or familiarities with jurors, *id.* ¶¶ 34-35, or asking hypothetical questions during voir dire, *id.* ¶¶ 36-40.

7.      Plaintiff also contends Defendants committed malpractice when Linscott failed to object to several of Gage's counsel's statements and arguments during the remainder of trial.  (*Id.* ¶¶ 41-58).

8.      Plaintiff has sued Defendants for negligent representation also known as legal malpractice based upon Defendants' representation in the underlying trial.  (*Id.* ¶¶ 65-74).

9.      Plaintiff's allegations of legal malpractice rest solely upon Defendant Linscott's trial conduct and strategy.  (*See generally id.*).

**II. Arguments & Authorities**

**A.      MOTION TO DISMISS STANDARD**

A court may dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).  *See, e.g.*, *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).  A complaint may be dismissed on this ground when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 46 (1957).  "A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall*, 935 F.2d at 1109.  However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Instead, "[f]actual allegations must be enough to raise a right to relief above the

2

speculative level." *Id.* Thus, "[t]he purpose of [a] motion to dismiss is to test the sufficiency of a complaint not to decide its merits," and "[t]he essence of a Rule 12(b)(6) motion is not that the plaintiff has pleaded insufficient facts, it is that even accepting all of his alleged facts, he has no legal claim." *Heyward v. Credit Union Times*, 913 F. Supp. 2d 1165, 1190 (D.N.M. 2012). "Whether a claim is sufficient to overcome a rule 12(b)(6) motion to dismiss is thus a matter of law." *Id.*

**B.    DEFENDANTS ARE SHEILDED FROM LIABILITY BY THE JUDGMENTAL IMMUNITY DOCTRINE**

Since this is a diversity case, the Court must apply the substantive law of Oklahoma. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).  The elements of a traditional negligence claim in Oklahoma are (1) the existence of a duty arising from the parties' relationship, (2) a breach of duty arising from the relation, and (3) injury proximately caused by the breach. *Myers v. Maxey*, 1995 OK CIV APP 148, 915 P.2d 940; *Erwin v. Frazier*, 1989 OK 95, 786 P.2d 61; *Allred v. Rabon*, 1977 OK 216, 572 P.2d 979. These elements have been refined over time as they apply in a claim for negligence (also known as malpractice) against an attorney, and today, "[t]he plaintiff in a legal negligence action must prove (1) the existence of an attorney-client relationship, (2) breach of a lawyer's duty to the client, (3) facts constituting the alleged negligence, (4) a causal nexus between the lawyer's negligence and the resulting injury (or damage) and (5) but for the lawyer's conduct, the client would have succeeded in the action." *Manley v. Brown*, 1999 OK 79, ¶ 8, 989 P.2d 448, 452; *see also Norton v. Hughes*, 2000 OK 32, ¶ 10, 5 P.3d 588, 591 (quoting *Manley* elements and stating "[t]he elements of a legal malpractice claim are well established in the state of Oklahoma."); *Robinson v. Southerland*, 2005 OK CIV APP 80, ¶ 33, 123 P.3d 35, 43 (same). In order to maintain a case for attorney malpractice, "[t]he plaintiff in a legal negligence action must prove (1) the existence of an attorney-client relationship, (2) breach of a lawyer's duty to the client, (3) facts

constituting the alleged negligence, (4) a causal nexus between the lawyer's negligence and the resulting injury (or damage) and (5) but for the lawyer's conduct, the client would have succeeded in the [underlying] action." *Worsham v. Nix*, 2006 OK 67, ¶ 31, 145 P.3d 1055, 1065 (2nd alteration in original); *see also Manley v. Brown*, 1999 OK 79, ¶ 8, 989 P.2d 448, 452 (same). Thus, "[t]o authorize a recovery in damages against an attorney for negligence, not only must negligence be established, but it must also appear that injury resulted to the plaintiff from such negligence." *Worsham*, ¶ 31, 145 P.3d at 1065; *Sutton v. Whiteside*, 1924 OK 189, ¶ 0.1, 222 P. 974, 974 syl. ¶ 1. In order to demonstrate causation, "[w]here the client claims the attorney was negligent in connection with litigation, the client must generally carry the burden to show that ***but for the negligence complained of the client would have been successful in the action in question***." *Worsham*, ¶ 31, 145 P.3d at 1065 (emphasis added); *Collins v. Wanner*, 1963 OK 127, ¶ 19, 382 P.2d 105, 108. In order to meet this "but for" causation burden, a malpractice plaintiff who has lost a suit allegedly due to his or her attorney's negligence must show: "(1) [t]he original claim was valid; (2) [i]t would have resulted in a judgment in his favor; and (3) [t]he judgment would have been collectable." *Rorrer v. Cooke*, 329 S.E.2d 355, 369 (N.C. 1985) (collecting cases); *see also* 104 *Am. Jur. Proof of Facts* 3d 317 (Demonstrating "but for" causation on legal malpractice claim "entails proof that the original claim was valid and would have resulted in a judgment in [client's] favor.").

In addition to these requirements, negligence actions against attorneys are also subject to the standard principles of negligence. *See Worsham*, ¶¶ 31-32, 145 P.3d at 1065-66; *Erwin v. Frazier*, 1989 OK 95, 786 P.2d 61 (applying general negligence rules to attorney malpractice action). Therefore, a plaintiff must prove the fact of damage to a reasonable degree of certainty, so the damages are neither speculative nor uncertain. *See e.g.*, *Bane v. Bryant, Anderson & Co.*,

1989 OK 140, ¶¶ 28-29, 786 P.2d 1230, 1236; *Martin v. Griffin Television, Inc.*, 1976 OK 13, ¶ 25, 549 P.2d 85, 92-93; *Bokoshe Smokeless Coal Co. v. Bray*, 1916 OK 111, ¶¶ 0.1, 10, 155 P. 226, 226, 231 ("Actual damages only may be secured. Those that are speculative, remote, uncertain, may not form the basis of a lawful judgment."). Therefore, "[i]n this jurisdiction, a[] [client] must establish the recovery which he or she could have obtained if the legal malpractice had not occurred in order to recover against an attorney . . . ." *Nicholas v. Morgan*, 2002 OK 88, ¶ 14, 58 P.3d 775, 780. "In such a case, damages are normally proved by introducing evidence establishing the value of the claim lost due to the attorney's neglect." *Id.* "Such a case has been referred to as a 'case within a case' because the damages against the attorney are wholly derived from the original action against the third-party tortfeasor." *Id.* ¶ 14, 58 P.3d at 780-81; *see also Williams v. Lakin*, No. 06-CV-0515-CVE-PJC, 2007 WL 1170597, *3 (N.D. Okla. Apr. 18, 2007). The case within a case (also referred to as suit within a suit or trial within a trial) concept and trial method clearly establishes whether a claimant has a valid underlying claim, would have recovered damages on that claim, and the amount of such damages, if any. *See Law Offices of Lawrence J. Stockler, P.C. v. Rose*, 436 N.W.2d 70, 77 (Mich. App. 1989) (Suit within a suit concept has objective of "satisfy[ing] the requirement that the client prove damages based on factual evidence, rather than mere speculation."); *Fox v. Berks*, 778 N.E.2d 1141, 1142 (Ill. App. 2002) ("The malpractice plaintiff is required to prove a case-within-a-case, that is, the plaintiff is required to prove the underlying action and what his recovery would have been in that prior action absent the alleged malpractice."). Under this method, a preliminary trial is held to determine whether a defendant would have been successful in defending in the underlying suit. Only if the factfinder determines the defendant would have been successful on the underlying suit does a second trial proceed on the issue of the attorney's alleged negligence.

Further, well-settled Oklahoma law recognizes attorneys are not guarantors of outcomes and are entitled to exercise reasonable professional judgment without fear of liability, particularly when dealing with strategic decisions or areas of unsettled law.  In *Collins v. Wanner*, the Oklahoma Supreme Court held the rule should be:

> An attorney who acts in good faith and in an honest belief that his advice and acts are well founded and in the best interest of his client is not answerable for a mere error of judgment or for a mistake in a point of law which has not been settled by the   court of last resort in his State and on which reasonable doubt may be entertained by well-informed lawyers.

*Collins v. Wanner*, 1963 OK 127, ¶ 23, 382 P.2d 105, 109; *see also Manley*, *supra*, ¶ 8 (referring to this rule as the "*Collins v. Wanner* standard of professional care"). The Oklahoma Supreme Court reiterated its support of this rule in *Wabaunsee v. Harris*, finding that the doctrine protects lawyers who make professional decisions where the legal outcome is uncertain or where reasonable attorneys could disagree. *Wabaunsee v. Harris*, 1980 OK 52, ¶ 8, 610 P.2d 782, 784.

The judgmental immunity doctrine was once again upheld in *Manley v. Brown*, 1999 OK 79, ¶ 10, 989 P.2d 448, 452. In *Manley*, the Court determined the key issue in a malpractice case is not whether the attorney's decisions were successful, but whether they were within the bounds of reasonable professional judgment. *See id.* ¶ 57.  The Court rejected hindsight bias and noted that attorneys must be judged based on the facts and knowledge available at the time of the alleged error, not by the outcome. *See id.* ¶¶ 27, 31.  The Court explained: "We look in this cause not to whether Brown's defense service in the antecedent case was at an optimum nor to whether the litigation might have resulted in a more favorable outcome had his strategy choices been different." *Id.* ¶ 10.  The court further held that *"[f]ailure repeatedly to advocate a questionable theory of defense rejected earlier at nisi prius does not constitute a lawyer's breach of due care,"* illustrating

6

the breadth of the doctrine's protection for strategic decisions made during ongoing representation.

*Id.* ¶ 31 (emphasis in original).

The Oklahoma Court of Civil Appeals has further explained the professional judgmental

immunity rule, stating:

> In paragraph number eight, plaintiff alleges that Harrod "failed to depose witnesses timely which resulted in overtime payments to reporting service to get depositions taken and recorded prior to the trial." And, she goes on, he failed to subpoena this witness and that witness who would testify as to where certain assets went. Such criticisms go to the very core of a lawyer's professional discretion and prerogatives and the results of his decisions are not actionable unless they involve two elements: (1) they manifest professional incompetence, and (2) they cause actual damage to plaintiff.

*Birchfield v. Harrod*, 1982 OK CIV APP 2, ¶ 18, 640 P.2d 1003, 1007. "A lawyer is not a trustee

of any claim or asset owned or sought by his client. His duty is to see that the ascertainable rights

of his principal are protected as fully as possible under the prevailing circumstances within the

bounds of common sense and proper professional practices." *Id.* at 1009. Further, although the

judgmental immunity doctrine requires good faith, Oklahoma courts have clarified that good faith

is measured by an objective rather than a purely subjective standard. In *Myers v. Maxey*, 1995 OK

CIV APP 148, 915 P.2d 940, 946 the Oklahoma Court of Civil Appeals explained that "an objective

approach to the question of good faith seems commendable in our view, lest an attorney's own

protestations of good faith insulate him from a charge of negligence."

Like Oklahoma, courts in other jurisdictions have recognized the professional judgmental

immunity doctrine. In *Biomet, Inc. v. Finnegan Henderson LLP*, the court recognized the

judgmental immunity defense in a legal malpractice action, stating:

> An informed professional judgment made with reasonable care and skill cannot be the basis of a legal malpractice claim. Central to the doctrine is the understanding that an attorney's judgmental immunity and an attorney's obligation to exercise reasonable care coexist such that an attorney's non-liability for strategic decisions is conditioned upon the attorney acting in good faith and upon an informed

judgment after undertaking reasonable research of the relevant legal principles and facts of the given case.

*Biomet Inc. v. Finnegan Henderson LLP,* 967 A.2d 662, 666 (D.C. 2009); *see also Phillips v. Duane Morris, LLP*, No. 13-CV-01105-REB-MJW, 2014 WL 2207194, at *1 (D. Colo. May 28, 2014) (collecting cases).  In *Biomet Inc.*, the D.C. Court of Appeals used the term "judgmental immunity" to describe a doctrine that the court dated back to the 19th century Supreme Court case of *National Savings Bank v. Ward*, 100 U.S. 195, 198 (1880), which held that "an attorney is not liable for mistakes made in the honest exercise of professional judgment." *Biomet Inc.*, 967 A.2d at 665.

Essentially, the judgmental immunity doctrine provides that an informed professional judgment made with reasonable care and skill cannot be the basis of a legal malpractice claim. This case underscores that federal courts may uphold the judgmental immunity defense when attorneys act in good faith, even if their strategic decisions are later challenged.  In *Woodruff v. Tomlin*, the Sixth Circuit Court of Appeals, applying Tennessee law in a diversity suit like this one, held:

> When viewed in light of the general Tennessee rule which holds attorneys liable for losses to clients for failure to exercise reasonable skill and care, Stricklan [v. Koella] can only mean that there can be no liability for acts and omissions by an attorney in the conduct of litigation which are based on an honest exercise of professional judgment. This is a sound rule. Otherwise, every losing litigant would be able to sue his attorney if he could find another attorney who was willing to second guess the decisions of the first attorney with the advantage of hindsight. If this were permitted, as Judge Brown pointed out in the present case, the original trial would become a "play within a play" at the malpractice trial. To hold that an attorney may not be held liable for the choice of trial tactics and the conduct of a case based on professional judgment is not to say, however, that an attorney may not be held liable for any of his actions in relation to a trial. He is still bound to exercise a reasonable degree of skill and care in all his professional undertakings.

616 F.2d 924, 930 (6th Cir. 1980) (footnote omitted). In fact, in *Woodruff v. Tomlin*, the Court noted "neither counsel nor we have found an American decision holding an attorney liable for the choice of trial tactics or the good faith exercise of professional judgment."  *Id.* at n.1.

8

Similarly, in *Inlet Condominium Association v. Childress Duffy, Ltd., Inc.*, the U.S. District Court for the Southern District of Florida applied the judgmental immunity doctrine to grant summary judgment in favor of the defendant attorneys. *Inlet Condo. Ass'n, Inc. v. Childress Duffy, Ltd., Inc.*, No. 12-21711-CIV, 2013 WL 11320057, at *6 (S.D. Fla. Sept. 4, 2013), aff'd, 615 F. App'x 533 (11th Cir. 2015). The court found the attorneys' decision not to call a specific expert witness was a tactical choice protected by judgmental immunity, stating: "The working up and trying of a case, in many respects, are matters of tactics, strategy, and professional discretion and judgment."

The professional judgmental immunity rule very clearly applies to objections raised or not raised during *voir* dire, and Oklahoma courts have directly addressed whether an attorney's decision to withhold objections during voir dire constitutes protected trial strategy. In *Klinekole v. State*, the Oklahoma Court of Criminal Appeals confronted this precise issue. 705 P.2d 179, 185. (Okla. Crim App. 1985). In that case, defense counsel purposely failed to object to allegedly erroneous comments made during voir dire, and the court refused to question counsel's tactical choice, stating: "In the instant case, defense counsel stated that he purposely failed to object to the alleged erroneous comments during voir dire. We will not question defense counsel's viable trial strategy with the benefit of hindsight." *Id.* Likewise, in *Nguyen v. Reynolds*, 131 F.3d 1340 (10th Cir. 1997), the Tenth Circuit Court of Appeals, applying Oklahoma law found "an attorney's actions during voir dire are considered to be matters of trial strategy . . . ."

The decision not to object to a voir dire question is precisely the kind of in-the-moment judgment call about which reasonable attorneys regularly differ—whether, for example, an objection would alert the jury to a harmful issue, appear to antagonize jurors, waive strategic positioning, or expose a weakness in the client's case. Such decisions fall squarely within the scope

9

of the judgmental immunity doctrine as articulated in *Collins v. Wanner* and *Manley v. Brown*. The Court in *Hooks v. Ward* recognized this when it quoted trial counsel's explanation that not objecting was deliberate strategy, stating: "[H]e believed it was good strategy not to object during opening or closing statements. He said: 'I think it looks bad to the jury. The thinking, the conventional wisdom is that if you stand to your feet every time there is anything remotely off color [then] you are going to appear to be a whiner to the jury and you are afraid of the truth coming out.'" 184 F.3d 1206, n.10 (1999). *See also Est. of Krieger v. AmGuard Ins. Co.*, No. K17C-11-003 JJC, 2021 WL 733442, at *3 (Del. Super. Ct. Feb. 25, 2021) ("Permitting opposing counsel to overreach in argument can be a viable trial strategy. In recognizing this, the Court explained the difference between criminal matters, where the Court must sometimes intervene sua sponte, and civil cases where there is no such duty.")

In the present matter, Great Lakes' claim focuses on DSDA's alleged failure to object to voir dire and other matters during trial. However, under *Collins, Wabaunsee*, and *Manley*, the decisions to object or not object fall within the protected sphere of trial strategy, especially if Defendants believed objections would be counterproductive with the jury or ineffective given the trial court's permissiveness.

> Whether to object to an improper statement in closing argument involves the exercise of the attorney's judgment. "The decision of when or whether to object is a classic example of trial tactics." *State v. Madison*, 53 Wash.App. 754, 763, 770 P.2d 662 (1989). Accordingly, the attorney judgment rule applies and the Fire District had the burden to come forward with evidence that Matson's failure to object either (1) was not within the range of reasonable alternatives from the perspective of a reasonable, careful, and prudent attorney in Washington or (2) resulted from Matson's failure to exercise reasonable care. We note that "allegations of negligence pertaining to trial tactics and procedure [are] matters frequently difficult to prove." *Walker v. Bangs*, 92 Wash.2d 854, 858, 601 P.2d 1279 (1979).

*Clark Cnty. Fire Dist. No. 5 v. Bullivant Houser Bailey P.C.,* 180 Wash. App. 689, 713, 324 P.3d 743, 756 (2014)

No Oklahoma court has held that failure to object in voir dire or trial constitutes per se legal malpractice. Strategic restraint is often a tactical decision, not a breach of duty. Accordingly, judgmental immunity should apply to prevent this malpractice action.

Moreover, trying this case to a jury in the mandated "cases within a case format" would be an absurdity based upon the errors claimed by Plaintiff in the Complaint. All legal malpractice trials must be tried in a "case within a case format" as the complaining party must prove it would have been successful in the underlying suit *prior to* determining if the attorney mishandled the representation. Here, Plaintiff will need to demonstrate that if Defendants did not allow the underlying plaintiff's counsel to address potential jurors by their first names and to engage them in pleasantries during voir dire, then the jury would have reached a defense verdict or a verdict of less damages for the underlying plaintiff. Plaintiff will also need to demonstrate damages would have been less if Defendants had objected more to the underlying plaintiff's counsel's comments during trial. The difficulty of re-trying this matter in the case within a case format demonstrates exactly why the judgmental immunity rule exists because a jury simply cannot re-try these issues, *i.e.* "What would the verdict have been if the underlying plaintiff's counsel did not call potential juror Ms. Johnson by her first name, Debra?" or "Would there have been a defense verdict if the underlying plaintiff's counsel did not ask another potential juror if he had been fishing yet this year?" Under these circumstances, the judgmental immunity doctrine requires dismissal of Plaintiff's Complaint.

### III. Conclusion

WHEREFORE, premises considered, Defendants respectfully request the Court dismiss Plaintiff's Complaint in its entirety for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

**FRANDEN | FARRIS | QUILLIN
GOODNIGHT | ROBERTS + WARD**

*/s/Joseph R. Farris_____*
Joseph R. Farris, OBA #2835
2 West 2nd Street, Suite 900
Tulsa, Oklahoma 74103
918/583-7129 Phone
918/584-3814 Fax
jfarris@tulsalawyer.com
*Attorneys for Defendants*

### CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of May, 2026, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Laura L. Hamilton
Lawrence R. Murphy, Jr.
Keith A. Bruett
Ellen E. Anderson
*Attorneys for Plaintiff*

*/s/Joseph R. Farris_____*